Next case is 2450193 Schultz v. HomeBridge Fin Svc Russell Thompson v. Daniel Schultz v. HomeBridge Fin Svc May it please the Court, my name is Russell Thompson and I represent Daniel Schultz. This appeal arises from the District Court's dismissal of Ms. Schultz's first amended complaint for failure to state a claim. In her first amended complaint, Ms. Schultz alleged that HomeBridge, her mortgage servicer for her Arizona home, violated the Fair Credit Reporting Act by failing to conduct a reasonable investigation into her credit dispute and the Texas Debt Collection Act through its misrepresentations in the collection of that mortgage debt. I may refer to these statutes as the FCRA and TDCA for convenience. Here Ms. Schultz contends the District Court erred in four ways. First, by finding that she failed to state a claim for actual damages under the Fair Credit Reporting Act. Two, by finding that she failed to plead a willful violation of the FCRA. Three, finding her TDCA claims did not arise out of the same conduct, transaction, or occurrence such that they related back to the filing of her original complaint. And four, finding she failed to allege actionable misrepresentations under the TDCA. I will address these in order. First, Ms. Schultz's first amended complaint stated a claim for a willful violation of the FCRA. As an initial matter, the District Court applied the wrong willfulness standard when it held that a defendant commits a willful violation only when it engages in willful misrepresentations or concealments. This contradicts the Supreme Court in Safeco, where it held that under the FCRA, willfully also means to act in reckless disregard of a consumer's rights under the Act. Reckless disregard is an action entailing an unjustifiably high risk of harm that's either known or so obvious that it should be known. Under the FCRA, a furnisher's... So, are you saying that reckless disregard is equivalent to willful under the Supreme Court precedent? Yes, Your Honor. Under the Safeco decision that was discussing the Fair Credit Reporting Act itself. Under the FCRA, a furnisher notified of a credit dispute must review all relevant information provided, conduct an investigation, report the results, and then modify, delete, or correct any inaccurate information. You know, with regard to the FCRA, isn't the problem that she didn't... She actually, let's see, she told... She made one payment, then she made a second payment, but she told her bank to cancel one of the payments, and she told Homebridge to cancel, return her the other payment. Well, she doesn't allege that she told Homebridge... She ended up... Go ahead. Sorry, Your Honor. She doesn't allege that she told Homebridge. She called them and asked them to reverse one of the electronic payments, and it told her it couldn't, and it could only mail a check to take 15 days. She doesn't allege that at that point, she asked them to mail the check, and she didn't know that they did. I thought she said she didn't want... Couldn't wait 15 days. Right. That's why she disputed with her bank account, because by the time all of this occurred, 15 days would have put her past the September payment on her mortgage. So if they made a mistake at that point, it was sort of by trying to accommodate her by saying, we will issue a check, and then when she said it was inconvenient, they were going to issue her a check anyway. I mean, I'm not sure how I see that being willfully in disregard of her rights at that point. Well, at that point, Your Honor, the FCRA claim had not arised. The FCRA claim doesn't arise until the consumer disputes with the credit bureaus. So... That's in January, right? Exactly. So right. So in January, she goes ahead and she disputes, and this is where she alleges that they performed a willful violation, because the first thing a reasonable investigation would entail is looking at its own account notes and looking at its own records. Had it done that, the first thing it would have discovered is, hey, it looks like we issued a check to her in August for one of those payments. This could be the issue. I mean, yeah. And the interesting question to me is, did the check ever clear? No, it did not. There's no evidence whether it cleared? No, there's not. She never received it. And I think... Well, that's what she alleges. That's why I'm asking you. Sure. And I believe she also alleges later on that Homebridge acknowledged that it wasn't negotiated months later when it was finally figured out. Because if it had looked at its records, it would have saw that. And then it could have checked the bank account and checked itself and saw that the check wasn't negotiated. These are perfectly reasonable actions you would expect a furnisher to do. And had it done so, it would have known her payment wasn't laid, it had the funds, and this whole thing wouldn't have never happened. So just like the Supreme Court said in Safeco, this is the same situation where Homebridge, at the time of her dispute and its investigation, had reason to know facts which would lead a reasonable person to realize that its unreasonable credit investigation created a substantially greater risk of harm than that which is conduct nearly negligent. Because, again, it was in its own records. It was a two-step process. Look at the notes, see we saw a payment, check the status of that payment. It wasn't paid. Problem solved. What's your best case for saying this is reckless? Safeco. Well, there's a... What about the Stevenson case? The defendant does not act willfully when it fails to investigate adequately and fails to correct inaccurate information in the credit report. I believe some of that arises from the Cameron and Pinter cases that were considered different portions of the FCRA. I'm not, off the top of my head, familiar with the exact case that you're talking about. Willful is willful, and you're not going to argue that it means different things in different portions of the same statute, are you? No, Your Honor. I'm just talking about what constitutes a willful investigation for a credit reporting agency is different than what is a reckless investigation by a furnisher. Because the furnisher has access to the records. The credit bureau is merely conveying information back and forth. So, where a credit bureau gets a dispute, all it really has to do is forward that to the furnisher, and then when the furnisher responds, look at that response, look at that evidence, and see if the two line up, which is pretty straightforward most of the time, whereas the furnisher actually has the records and is involved in that account personally. So, what's reasonable under the one claim for a furnisher is different than for the credit bureau itself, just because of their position. What cases say that? I don't know that a case has said that explicitly one way or another. It's just kind of the way the statute works, based on the availability of information. So they could be liable for negligence under this statute, but not willfulness, right? They could be. Right. If a court finds or a jury finds that they didn't willfully violate, yes, they could be. And what's the difference in penalty between a negligence and a willfulness finding? So, for a negligent violation, the consumer has to establish actual damages. For a willful violation, the consumer is entitled to either their actual damages or statutory damages of up to $1,000. They're also potentially entitled to punitive damages as well. But there's no ground for punitive here. We don't know until we do more discovery and find out, you know. Because our expectation is that the people that are reviewing the notes don't have access to the bank account records, which would seem to be a pretty key, important piece of information to allow their people to cut off, but we just simply won't know until we get any more  Well, whatever. All right. We also believe that she does state a claim for a negligent violation for actual damages. This court has made clear that actual damages under the FCRA exist where the erroneous credit report resulted in a higher interest rate. Here, the first amended complaint alleges that on January 10th, 2021, Ms. Schultz disputed with the credit bureaus and Homebridge failed to correct it. Instead, it continued to report her as 30 to 59 days past due to Equifax and 30 days late in October to both TransUnion and Experian. This is in January 2021. Two months later, when she purchases a home in March 2021, this is still how it's being reported. And because of that negative adverse reporting that's incorrect, she affirmatively alleges she received a higher interest rate on that home purchase mortgage. Thus, she states a claim for actual damages under the FCRA. Third, Ms. Schultz's TDCA claims relate back to the original complaint. Rule 15 makes clear that an amendment relates back when it asserts a claim that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original complaint. Here, it seems that Homebridge sort of relies on Holmes v. Greyhound lines to argue that the complaint must have put it on notice of the actual claim itself, but that's simply not true. The court's statement that notice is critical was simply another way to summarize Rule 15's requirement that it arise out of the same conduct, transaction, or occurrence. If it did, they had notice. To that end, a party should not be protected by the statute of limitations. What's your best case for suggesting that the claims relate back? It could be Kansa Reinsurance Company v. Congressional Mortgage, which is out of this court in 1994. Just going back to that notice language, the notice language actually appears to come from this court's citing to the Supreme Court's decision in 1945, Tiller v. Atlantic CLR Company. In that case, a wife sued a railroad company. Under the Federal Employers Liability Act, alleging a negligent operation of a railroad car caused her husband's death. She later amended to add another claim out of a different statute, the Federal Boiler Inspection Act. On appeal, the Fourth Circuit found that the claims did not relate back. The Supreme Court reversed that, reasoning that, quote, there's no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard. But even if that case is still good law, because I don't know the extent to whether Rule 15 of the Federal Rules may have changed the result of that case, can you tell us about that? I don't believe it has changed. Well, don't believe it's not good enough. Maybe Wright and Miller or Moore's Federal Practice cite that case as good law. I don't, I didn't have time to look that up. When I was reviewing the case in preparation, it, um, Lexis did not have it as a red mark on it. But the facts of the, oh, good. That's the most I can represent from my recollection here. Modern world of research. Uh, a, um, the, uh, you know, it, it, it was recharacterizing the same facts under a different statute. But here you have different facts because your FCRA violation doesn't even start, as you reminded us, until January or February. But the TDCA relates back to this whole mess when she, in September and October, when she was getting overdue notices, right?  But all that was set out in the original complaint. So those transactions, conduct, and occurrence. Well, you can always try to put everything in the complaint, but you have to give the parties notice of what the, uh, claims are. And these are fairly onerous statutes. But the claims are no different. Um, you know, Homebridge and the District Court both claimed that it was laser focused on credit reporting. But this isn't true. Both complaints have virtually identical allegations about her purchase of the Arizona house. Well, all that is to explain the background of the Credit Reporting Act. But even if you go, even if you go beyond that, what do you say about how does, how does anything that Homebridge did align with misleading information to her? I think that's the point of the TDCA. Right. But that is, that relieves. Misrepresenting the character, extent, or amount of her debt. Right. Or any other false representations or deceptive means, which those are all laid out in the original complaint. They include Homebridge, uh, falsely claiming it couldn't reverse the electronic payment, which it could have done. Um, it, it talks about debt collection. It talks about collecting her August payment twice, collecting her September payment, collecting the payoff of her mortgage. It mentions the October payoff statement that Homebridge provided to her that overstated it by exactly one mortgage payment and that she then paid, thus it collected that extra amount based on that fact, that false representation, these, these were all part of the same transaction conduct or occurrence set out in her complaint that was necessary background providing the information to support the Fair Credit Reporting Act claim. Well. This is all one big, because debt collection, credit reporting is debt collection. I mean, even the Fair Debt Collection Practices Act at section 1692E8 makes it unlawful to report false information. But that's not part of your TDCA claim. The credit reporting itself? Right. No, but it's collection of the debt that is discussed about in the credit reporting. So what you're, okay, so you're trying to say they're companions, except in this case, it appears they arise out of preceding facts, but what's your, what is your most analogous Texas case for, uh, finding liability for stating a claim here? If it did relate back. For stating a claim for misrepresentation or for relating back? If it did relate, no, assume it related back, what's your most analogous case? I'm not sure I, I understand the question because it really is the statute itself. Was there a misrepresentation? Did she rely on it and did it cause her harm? And I think here we've alleged numerous, um, you know, she only disputed electronically because they told her she, it couldn't, um, they couldn't reverse it. She'd held off disputing because they told her they were going to resolve the issue. I don't know whether you're, I don't remember whether your brief covered this, but you can pull it up on rebuttal. Tell us what you say about Miller v. BAC home loans, which said that the opposing party's misrepresentations must lead them to think differently with respect to the character, extent, or amount, or status of the debt, but your red light's on. Thank you. All right, sir. Okay. Mr. Herbert. Good morning.  Release the court. Brendan Herbert from Polson LAPC, here on behalf of the FBI. I'm going to pull, I'm going to pull this up. Tall lawyer problems, I guess. Well, the claims in this case may be predicated and derivative of miscommunications between a servicer and a customer. What it does not do is sustain causes of action under the Fair Credit Reporting Act and the TDCA. A background, I think, is necessary, and Justice Jones, you were asking about this. The facts that gave rise to this issue were, as the court correctly stated, two payments were made for whatever reason. There was a phone call that was made where the amended complaint alleges that there was a request for a reversal of one of the payments. Homebridge confirmed that it could not reverse, but that it could refund the check. The amended complaint is silent, but the district court judge in dismissing the case confirmed that there was no indication that the, uh, that the appellant ever told Homebridge to not issue the check. Instead, she went to her own bank, USAA, and had, uh, that check returned. The operative effect, or reversed, rather, the operative effect of that is that despite the fact that there were two payments made on the mortgage debt, and, uh, sent in in August of 2020 when the first payment was due by her to Homebridge, neither one of those payments, because of her own individual requests, one to the servicer and one to the bank, to her bank, were applied to that loan. When she then went to make a payment in September, or did make a payment in September of 2020, that payment, because no payment had ever been applied to, uh, to August, was applied to August. Therefore, she was 30 days past due on her account, and that was what was reported to the credit reporting agencies. She then sold her Arizona property, as she alleges in her amended complaint and in the briefing. She pays off the entirety of the debt, uh, with a payoff, but again, there had been no September payment, because the September payment had been retroactively applied to August. So the, the August payment was 30 days past due, the September payment was 30 days past due. The, ultimately, she files suit, and when she files suit, she alleges, alleges two causes of action against Homebridge. One was for a violation of the FCRA, the other one was arrest for violation of the Real Estate Settlement Procedures Act. Uh, she also sued the credit reporting agencies that were ultimately dropped as parties. Several months later, in, in, uh, February of 2023, she amends, and as the court noted, included new facts, um, regarding communications and, and representations allegedly made by Homebridge in September of 2020. We move to dismiss on the basis that it did not relate back, um, uh, the TDCA claim did not relate back, uh, it was outside the two-year statute of limitations, and that the FCRA violations, um, were, were deficient. I'd like to, I'd like to first address the FCRA violations. On the willfulness issue, this is a violation for, uh, a claim for an alleged violation of 1681S2, um, B, which requires a furnisher of credit to conduct a, an adequate investigation in response to a written dispute. The, the, the two avenues of recovery are under 1681N and O, as the district court judge explained in the order granting motion to dismiss. 1681N allows for recovery of punitive damages and does not require a showing of actual damages. And the, the district court judge, uh, rightfully found in dismissing, um, uh, the notion, uh, that there was a willful violation, found that there were no facts to support that the credit reporting agent, I'm sorry, that the, that the furnisher, um, had, had acted intentionally, had, had acted, uh, in a willful violation of the act. Um, instead, the court referenced the Cameron case, um, and then we also, um, I, I know Justice Jones also referenced Stevenson for, for the, the reality that generally speaking without more, an allegation that a furnisher of credit fails to conduct an adequate investigation does not rise to the level of willfulness. Now, the district court judge, I, I, I clearly saw that, um, followed the law and, and, and reviewing the amended complaint, saw exactly what we saw and is that, and that is that the only allegation of the 125 paragraphs in that, in that amended complaint that references anything that's willful at all is the allegation that it was willful, that the, that the failure to investigate was willful. There's no innuendo, slander, um, any of the factors that, um, that, that, that the Millstone site case, uh, case, uh, references, uh, misstatements or whatnot that rise to the level of, of, of willful. The, the appellant also takes issue with, uh, the court's use of the Cameron case and there's this issue of whether or not there was a different standard that was applied. The Cameron case addresses a, a, a, a conscious disregard for the duties under the Fair Credit Reporting Act. Well, let me, uh, I mean, the gaping hole in all of this is, uh, home, when did Homebridge find out that the check had not cleared? That, Your Honor, that, that's not part of the record, um, for, first of all. For me? I'm sorry? That's, you're saying that's not part of the record? That, well, it's, it's, what, what ended up happening, Your Honor, is after the loan was paid off, okay, in October of 2021, the allegation in the amended complaint is that Homebridge then sent, then sent the check to, uh, at, at, for the, in the amount of one monthly payment to the appellant. Yeah, because in the closing, they had overcharged her for a monthly payment. Well, there was, well, and I, I would just respectfully disagree that they overcharged. They were, they still had that payment. It wasn't overcharged because that payment may, while it may have been in their possession, it was never applied to the loan. How much for the 15 days? Well, and, and, Your Honor, I, I, I don't know, again, it's not part of the record, I don't know, I know that the, that the, the, uh, appellant had moved during that time. I don't know whether or not the check had been sent to a different address, um, or whatnot, but I do know that ultimately that $1,200 and change was returned that was, that may, as the district court judge had alluded to in the order dismissing the case, that technically Homebridge was in possession of it, but again, it was, it, it, it, it was never applied to the loan at the borrower's own request, so . . . But again, if they sent out the check, then the closing statement would have been, I'm not sure exactly, I don't recall exactly what Homebridge sent to the credit agencies, but obviously Homebridge misrepresented the status of her account to the, to the credit agencies. Well, I, I, I would respectfully disagree, Your Honor, I, I don't think that Homebridge did, and the reason that I don't think Homebridge did is because there were two payments that were made, and that she had asked individually her mortgage company and her bank to reverse all . . . I see. I, I understand, Your Honor, but, but the, the issue is, is that what matters for purposes of credit reporting in a, a, a furnisher's duty under the Fair Credit Reporting Act is to report accurate information at the time that it was, that, that, that initial information is reported, right? So that doesn't, the fact that the loan was paid off does not, does not confer, does not require us to go back, Homebridge or any furnisher, to go back and remove information that was accurate at the time that it was submitted. Even though, even though the debtor is telling you you've made a mistake, it's a mistake? Well, and that's what 1681 S2B is for, because there should be an, an adequate investigation. Homebridge confirms that it did do an adequate investigation. Well, Homebridge, Homebridge what? Homebridge confirms that it did conduct an adequate investigation in response to the negligent disputes in January of 2021, Your Honor. That's a, that's an issue. Well, that, that is of course an issue, Your Honor, and I, I, I agree. You can't win on that at this stage. Well, no, and I understand that, but that's not, that's not the dispositive issue. I think going back to the willfulness issue, the, and then I'll get to the negligent issue, because I think that that's where this, your concern, Chief Judge, might come into play. Just circling back to the willfulness issue, the, the, the circuit, the, the district court rightly found that there was no allegation in the amended complaint that could give rise to willfulness. A failure to investigate is not sufficient in and of itself without more to suggest that there was some willful violation. It's, it's just not, and, and there's, there's, there's, there's a substantial amount of case law that, to, to support that. As to the negligent claim, and Chief Judge, I think this is where, where you were going with this, is that yes, the issue of whether or not a reasonable investigation takes place, I think is a question of fact that would, that would, unless it was barred by the statute of limitations or something else, would in all likelihood not be appropriately, um, appropriately addressed or disposed of at the motion to dismiss stage. But the, that's not what the district court judge did here. The district court judge determined that there were no actual damages that were causally connected to the allegedly improper investigation. And so that is, having disposed of in the motion to dismiss, the claim under 1681-0, which does not require actual damages, but which does require punitive damages, we then have to turn to whether or not recovery, recovery is viable under 1681-0, which requires actual damages. The district court judge determined that the, that the, the damages that were alleged in the, in the amended complaint began to accrue before the written dispute was submitted to the credit reporting agencies. The, the fair credit, I'm sorry, go ahead, were you going to say something, Chief Judge? I do have a question about that. It seems that she would have been damaged by continued inaccurate reporting, even after January 2021. So the termination on that is factually incorrect and not appropriate for, at least there's an argument that she was damaged by continued inaccurate reporting after January 2021, which would make dismissal on this record inappropriate. Well, so your honor, the, the district judge cited a case called Rambrand from the Southern violation. The Fair Credit Reporting Act specifically says that fair credit liability does not trigger, and I think Justice Jones referred to this when we started getting into the amendment and the transaction and occurrence issue, but a fair credit claim cannot, exposure cannot trigger until a written dispute is submitted. The written dispute was submitted by the consumer to the credit reporting agencies, thus giving Homebridge the ability to conduct the investigation in January of . . . And their argument is that that investigation was inadequate, which led to, which caused her to have a higher interest rate. Right. And so, and I understand that. So on the one hand, the district court said, well, anything that happened prior to the submission of the written dispute to the credit reporting agencies is not causally connected to the alleged violation of 1681 2B for failure to investigate. Now, the one issue that they do raise, and your honor, I agree with you, they, they do suggest that there was a higher interest rate. However, the, the, the district court judge, I, I presume, inferred that based on how the complaint was alleged is that it was the credit reporting that began in the fall of 2020 that that was the starting event of the, of the higher interest rate. That was the starting event of the credit, of the credit reporting. And so . . . Apparently she didn't . . . Each month would be a new claim. Each month would be a new claim. So I, it's not just a one and done, it's every time. I don't understand how you can get a motion to dismiss granted on this record, on the negligence. I understand, your honor. I, I, I don't, I, I'm not aware of case law, um, that each month it's a new claim. I, I, I'm, I am aware of case law that says that a failure to investigate and any damages occurred after that would be, would, might be recoverable under the Fair Credit Reporting Act under 1681 0. But as, as alleged though, in the, in the first amended complaint, even, even the, the count one, um, it, it alleges that the damages that they are claiming from the, uh, as a result of the failure to investigate, which they claim happened after the January written disputes, um, were suffering damages including but not limited to damage to her credit scores out-of-pocket loss, loss of the ability to obtain and benefit from credit, time and expense disputing the incorrect reporting, and mental and emotional pain and anguish. I believe that the district court judge assessed this and, by saying that all of these damages had occurred prior to the submission of the written dispute . . . Well, this is a 12B-6, right? Correct, your honor. So discovery would easily ascertain whether, when the damages accrued? Perhaps, your honor, perhaps. Um . . . But you, you, running short on time . . . I am. I'm sorry, Judge. You want to explain the TVCA claim? I, I do, your honor. I think that the district court judge was, was correct in determining that, um, the, the amended complaint was just different. It was a different transaction, um, and occurrence than the, than the initial iteration of the complaint. The, the district court judge determined that, um, the, the, the crux of the, and really the core of the allegations in the original complaint were fair credit, or were credit reporting based. This new amendment included debt collection, um, uh, claims under a state law analog of the Fair Debt Collection Practices Act, um, and I think the, the, the first iteration of the complaint dealt with representations that were being made to third parties, meaning a credit reporting agency, wherein the newest iteration, um, in the amended complaint dealt with, um, representations that she, uh, claims were made to her. Uh, I, I do not believe that that goes to the same transaction, uh, event or occurrence, and so I, I, I submit that the, that the court, uh, was, was correct. Even though if this court were to give the district judge the benefit of, uh, I'm sorry, the appellant the benefit of allowing this claim to relate back such that it is not time barred by, um, the, the two-year statute of limitations, I think there's still a, a fatal deficiency with the pleading, um, that the district court judge acknowledged and as a secondary argument dismissed that claim on, and that is the fact that there, there was no allegation in the first amended complaint that the consumer was misled by any of the statements that were made regarding the status, amount, or nature of the debt. Now there was certainly communications, um, regarding providing information to a, a, a third party regarding credit reporting, um, but in terms of the, there's, there's no allegation that was framed, again, in this 125-paragraph complaint sufficient to have the court determine that, um, uh, that, that it was compliant with, um, with the, uh, requirement that the borrower under a TDCA claim as a result of an alleged misrepresentation, um, be somehow misled, uh, regarding the character, status, or amount of the debt. Now they, they, they certainly do, the appellant certainly does attempt to, um, uh, well, first of all, in the opening brief, um, there's still real no, uh, effort to explain how the, the appellant was misled, just like in the response and opposition of the motion to dismiss, there was no real effort regarding, uh, a demonstration of how the, uh, the appellant was misled. Um, in, in the reply brief, they, they come back, the appellant comes back and tries to provide more detail, but it, that was just not raised, um, uh, in, in this context in the court below. Um, and I, and I would also just as a, as a closing matter, um, suggest that this is not the first version of the complaint, this is the, this was an amended complaint, the court, the case had been around for a while, um, the, the Homebridge did raise the fact that there was no, uh, allegation in the amended complaint that, that where the borrower suggested that she was misled to believe about the status, character, or amount of the debt, um, and, and that, that really went unaddressed at the lower court. And so, we do believe that that, uh, that issue is not appropriately before this court now. Uh, to, unless you have any other questions, um, I'm, I'm done and I would ask that the court, uh, affirm the, uh, district court's dismissal of the case. Thank you very much. All right, sir. Thank you, Mr. Thompson. Thank you. Just to briefly, uh, briefly touch on the FCRA before I head back to the TDCA. Um, here, we believe, you know, we're, we're talking about a 12B6 motion, we're talking about whether the, the complaint gives notice. Here, the complaint pleads sufficient notice, um, to allow discovery onto whether the violation was willful of the FCRA. It alleges, you know, that Homebridge had the funds at all relevant times and even the district court in its order realized this. Um, as the court has been discussing, um, the same reason for negligent violations, she alleges she got a higher interest rate after that dispute, um, which this court has said is sufficient for actual damages. Um, as to misrepresentations under the TDCA, um, she does argue that she's not misled. The complaint and first amended complaint lay it out. They don't specifically necessarily at times say she was misled, but her conduct on how she is misled is, is pretty clear. Um, and it's discussed in her opening brief, which is document 19 at 27 through 30. No, I think the pleadings are exactly the opposite of misleading. The pleadings are her, reflect that she's continuously asserting that she has made the payment. She has made them properly. They are not in, she is not in default and they're trying to, they're trying to persuade her otherwise and she doesn't, she never gets persuaded. No, she gets persuaded a number of times. Um, they tell her we can't reverse your electronic payment. So she has no choice but to rely on that and disputes with her bank. Um, well, no, that's it. That's at the very, very outset. But she believe she, there's an allegation that she insisted on the payment not being reversed at the same time that she was stopping payment on the other check from her bank. So there's, there's a setup at the beginning for which he might be partly responsible, but there's no doubt in her mind from step one that she has made a payment. Sure. But that doesn't mean that they're not mercer representing the character status or amount of the debt or simply using any false representations or deceptive means, but there's others. What about the case that I asked you about? Um, doesn't seem like that case is really discussed, um, in our briefing, but, but the proposition about her reliance on the misrepresentation is there because she does, um, again, you know, it repeatedly misrepresented, it would resolve the payment and credit reporting issues. She relied on this representation as to the character or status of the debt and didn't dispute for four months. If she disputed back in August when they reported her late September, when they reported her late, she probably saves herself a ton of damages that she incurred as a result. Um, they spoke with her on numerous occasions about the balance of the debt without even disclosing that it allegedly mailed her a check back. This is a material omission that if she had said, Oh yeah, I didn't get that check, put a stop payment on it because paragraph what they're saying today, and I forget whether this is in the record is that the check did not go out until after the closing on her other. That was the second check. They allege that a check was sent before in August after that phone call and paragraphs 48 and 49 of the first amended complaint are where she alleges that home bridge confirmed to her that that check was not negotiated and that they would put a stop payment on it. So they could have confirmed it at any time in the process. This is all information within their own hands. Um, so each time they have this conversation and don't tell her she's acting and relying on what they're telling her while missing this clearly material bit of information. Um, they also did it when she later had a conversation, um, where they said, Oh, by the way, we mailed you, we emailed you a letter and sent you a check to stop you from losing your mortgage on the first Texas home. They never sent the letter. They never emailed it to her and she lost the home. Um, and then of course there's their misrepresentation of the balance in the collection calls, the collection letters, but most importantly, the payoff statement as this court is discussed, like they mailed her a check for that one payment that they were exactly off by. This was a misrepresentation that denied her those funds from the time she paid off the mortgage until she finally received the check from them that wasn't sent out until November. But wait, that check has never cleared. No, the first check never cleared. They sent her a second check in November after she paid off the loan in full. And that's where, that's where all of this comes from and shows that they had this money that whole time. Um, it looks like I am out of time. So I would just, um, say, you know, for the reasons stated here today and in our briefing, Ms. Schultz respectfully request the court, um, reverse and, uh, send this back down to the district court for further proceedings. Thank you. All right. Thank you, sir. Court will stand in recess.